Oral argument not to exceed 15 minutes per side. Mr. Benghardt Lynn for the appellant. Thank you, Your Honors, and may it please the Court, Linus Benghardt Lynn, Assistant Attorney General for the State of Michigan, on behalf of the Respondent Warden, respectfully requesting reversal, and I've reserved three minutes of my time for rebuttal. Thank you. Your Honors, we request reversal in this case for either of two reasons. First, because Mr. Clark has not met and cannot meet the demanding standard of innocence under Section 2244B2B2. And second, because it was error for the District Court, even assuming he could pass 2244B2, for the District Court to grant habeas relief on the basis of this uncorroborated and suspicious affidavit. I'm going to speak first to the 2244 issue, and I note that Mr. Clark and the State Courts had to meet a lesser standard, only had to show that it was probable that there would be a different result on retrial. And the State Court held that he couldn't meet that standard. The District Court didn't engage in any analysis on this point and simply sort of said in a conclusory fashion that he had met this standard. The fact is this, Beria Stewart's testimony could either be believed by the jury or not be believed by the jury. Beria Stewart testified that she saw Mr. Clark and Mr. Harrington with the victim, Mr. Martin, on the night of the murder, arguing with him, assaulting him, dragging him into the woods just before three shots were fired, and that's where Michael Martin was killed. Now, she later had trouble testifying to that, and there was evidence that, in fact, she had been threatened by Mr. Clark and Mr. Harrington. Now, a jury is perfectly capable of... You say there was evidence. Is that from her original statement as well? Yes, yeah. There's not extraneous evidence of that? No, no, no, no. Yeah. And so, yeah, in fact, on the night of the killing, right, she said that they came and said, if you say anything, we're going to kill you. Now, a jury could believe that her trial testimony, I'm sorry, her preliminary exam testimony was truthful, and that when she testified contrary to that, it was because of these threats against her. Now, I think Mr. Clark could argue that a jury could believe the opposite, could believe that the preliminary examination testimony was false because there were maybe threats from the police, and that when she recanted, that was truthful. You don't have to decide what to believe. It's the jury's job to decide what to believe. And if any reasonable juror could conclude that it was Clark's threats and Harrington's threats that induced her to say exculpatory things, but it was the truth when she said what she saw at the preliminary examination, if any reasonable juror could believe that, then that's fair. And Kanaka Jackson's affidavit coming into the scene doesn't change that equation. A reasonable juror could still believe that she was – that Beria Stewart was telling the truth at the preliminary examination, that Tammy Wiseman was telling the truth when she said that Mr. Clark or Mr. Harrington tried to get her to change – to testify falsely on his behalf. I'm struggling with your interpretation of 2244. Is your position that any time there is a credibility issue with the new evidence that the defendant loses? Because that's what it sounds like. You're saying it's a credibility issue, the jury gets to decide, we're done here. Yeah, he has to prove his innocence. That's the standard of 2244, is he has to prove that he's innocent. And if a jury could – I mean, that's why – if any reasonable juror could find him guilty. And so that's clear. That's the standard that Congress wrote. But the standard is the facts underlying the claim, if proven – if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence the rest of the standards. So we have to look at what is offered and say, if this is proven, then – and viewed in the light of all of the evidence that's there – would it be sufficient? And in this case, if that affidavit is accurate, if proven, then wouldn't that undercut all of the evidence against him? I think that reads too much into the if proven. Because I think if you're – if you take it that way, then I think any petitioner can write their ticket to a second or successive habeas petition. Well, and I get – but my struggle, Counselor, is that if we take it your way, that any time there's a credibility issue they lose, you and I would appear to be on polar sides of this. Nobody wins for you, you fear everybody wins on my interpretation. No. Help me with that. It says if proven. Yeah. It would be sufficient. Why don't we have to then look at that affidavit and say, if this is proven, is this what happens in the case? And in this case, there's really nothing left if it's proven, is there? I think there – well, I think if proven has to mean that if Kanaka Jackson, in fact, would testify that she saw these things and that she – that this is what she witnessed. But I think you still have to say – and I'm not saying nobody wins under my standard. If I had an affidavit from a prison warden saying Mr. Clark was in prison during the year that this murder had – the entire year this murder happened, I would say, yeah, if proven. If that warden gets up and testifies, there's no reasonable dispute here. This is an innocent man. Of course, we wouldn't be here because we'd voluntarily do it. But if we were in court, we'd have to say, yeah, that gets past 2244B2B2. If we had a case where DNA evidence – this isn't one, right? But you could imagine a case where DNA evidence would be exculpatory. And you have the DNA evidence from the police lab, right? There's no – that's a case where if proven – the suppressed evidence is her statement, not the fact that it was a dark-skinned man who was not George Clark. Right. That's what it really is. read that so that we then imagine – because we always have to imagine in these circumstances that at trial you have the Stewart preliminary exam statement read to the jury and you have Kanika Jackson testify to what she puts in the affidavit and then you say could any reasonable juror – and say, you know, I was in Russia at the time of the killing. And if proven, that would exonerate him, right? And so you could file a second, third, fourth, fifth, sixth habeas petition as long as you put that affidavit in there because if proven, that shows you're innocent. But under that circumstance, wouldn't that be sufficient to have an evidentiary hearing? And then the determination would have to be made. I'm struggling with the idea – what sounds to me like the government is saying, I've looked at this affidavit, I disbelieve it. The government disbelieves this affidavit, therefore it's not appropriate. But that's not what's called for, is it? No, and Jill, let me be clear. We are not arguing that any decision by the district court or this court should be based on whether I believe this affidavit or not. What I think is if we get past 2244, I think a hearing would have been appropriate or denial of the petition because there are reasons, not based on my opinion, but just reasons out there to be suspicious of the affidavit, objective reasons, not my subjective belief. But if 2244B2 is going to serve a gatekeeping purpose, it can't let through every claim. Now, you're right. Not every petitioner would get relief just because he swears out an affidavit saying he was in another country. But every petitioner who was willing to do that would get past the gatekeeping. Then it's no gatekeeping at all. When you say the gatekeeping, are you referring to the allowance of filing the petition, which was done by a different panel of this court? Exactly right. And you can't really challenge that grant at this point, can you? No, no. And the statute says we can't challenge it. Okay. So you went forward and it's true there was the judge seemed to believe everything on paper and you didn't have an evidentiary hearing directly. So is the appropriate thing to have an evidentiary hearing? The judge makes credibility determinations at that point. Because if somebody doesn't make some credibility determinations, then Judge Stranch's question is right, that the prisoner can't ever win or can rarely win. I mean, if you assume that the affidavit is not just felonious, then somebody has to make some kind of determination of what would a reasonable juror believe with the hopefully the fact finder having before her all of the evidence that's available. You have some that didn't get in, they might have some that didn't get in. I disagree with that. On the thing of the 2244 question, I think the record as it stands is sufficient. I disagree with this. My sister will tell you that the district judge made a finding on this second prong of B2 and I think this court should also make a finding on that second prong of B2 and say, take this affidavit in the light most favorable. Say she would testify, say she'd testify clearly, consistently, coherently, and with a steady eye and a strong tone. Could a jury, could a reasonable juror, even assuming all of that, could a reasonable juror still say, you know what, I believe that Clark threatened Stewart, I believe that Clark threatened Tammy Wiseman, I believe that Stewart was telling the truth at the prelim and that she wavered later because of the threats. I don't believe Kenneka Jackson despite her testimony. You don't need an evidentiary hearing to find that a reasonable juror could believe that. Now if you want to find what a reasonable juror would believe, that's different. That's not the standard. A reasonable juror could still believe Beria Stewart's prelim testimony, could still believe Tammy Wiseman, and could still think that. I'm very low on time so, and I haven't gotten to sort of the if you get past 2244, and the only argument I think that I'm going to try to make in my limited time is that we have not, we are not arguing now. We're not switching it up and saying, well, don't hold a hearing and now do hold a hearing. What we're saying is to grant without a hearing was error. So, and that was consistent with what we said in the district court. I think there are two legitimate options open to the district court. Deny without a hearing, assuming you get past 2244. Deny without a hearing or hold a hearing. And we were hoping for the former, but either of those would have been a legitimate exercise of the district court's discretion, again, assuming you get past 2244. To take this affidavit as true, unquestioningly true, supported by this letter from two law students, which did not find the affidavit credible, and it would have been inappropriate to give that any weight if it had. And that is the only thing external to the affidavit that the district court relied on to bolster its credibility. That was an abuse of discretion. So even if you get past 2244, to grant without a hearing was an abuse of discretion. That's not inconsistent with what we argued in the district court. If there are any other questions, I'll see you back on rebuttal. Thank you. May it please the court. When this court granted George Clark leave to file his successive habeas petition, it recognized that there was no physical evidence linking him to the murder of Michael Martin. And it recognized that there was no witness who observed the actual shooting. And this court also recognized that Kenneka Jackson statements, if true, potentially exculpate Clark. The district court then found Kenneka Jackson statements credible and granted George Clark a conditional writ of habeas corpus, ordering the state to give Mr. Clark a new trial. That decision should be affirmed for two main reasons. First, the petition meets the gateway standard for successive habeas petition. Second, the district court did not abuse its discretion when it decided not to hold an evidentiary hearing under the circumstances of this case. And indeed, the state's request for an evidentiary hearing is now moot because the district court held a hearing and subsequently found Ms. Jackson's testimony credible. This court should affirm the district court's decision and allow Clark the opportunity for a new and fair trial. Can we consider what occurred at that, you're talking about the bond hearing? Yes. Can we consider that? Isn't the record usually closed at the time of the judge's initial decision? It is, Your Honor. But in this case, the district court held an evidentiary hearing in connection with Mr. Clark's bond matter. And at that hearing, Kenneka Jackson appeared and she testified consistently with her affidavit. The state had an opportunity to cross-examine her. And then at the close of that hearing, the district court issued an opinion in which it found Ms. Jackson credible. That credibility determination, I think it serves to underscore the original credibility determination that the court made in this case. And the court's analysis, the district court's analysis that the merits of the Brady violation were there are only supported by this additional credibility determination. So really, the request for an evidentiary hearing at this point is moot. I mean, if we were to reverse for an evidentiary hearing, it would just be essentially holding the exact same evidentiary hearing over again with the same witnesses. What's the import of the recorded phone calls, which apparently exist and were sort of adverted to but were not explicitly, at least no transcript in the record, no examination or cross-examination with regard to them? Your Honor, Ms. Jackson, I'm sorry, the state's investigator, Patricia Little, who appeared at the hearing, did testify about those call recordings. It became evident that the calls happened before the petition was ever granted in this case. The state never brought that evidence before the district court. I thought they had submitted it, and there seemed to be some indication of whether the judge had listened to them, but the best evidence of what they are never appears in the record as near as I could read it. They were submitted to the district court. I don't think that they were ever actually played in open court, Your Honor. But the point that I'm making is that the state had those calls available to it at the time it filed its answer to the habeas petition, and it never referred to those calls. It never submitted any kind of an affidavit describing that it had those calls. So it had the opportunity to present that evidence to the district court, and it failed to do so. But the substance of the calls really is of no matter. It's sort of neither here nor there. The calls took place after the affidavit had been submitted. You don't think that if at least a reasonable person listening to them might find them impeaching of her? There's this discussion back and forth that is in the record of, well, did you know him well? I knew him, but I didn't know him. Did you know him well enough to have these phone conversations? That would seem to be arguably impeaching of her credibility. Well, I mean, certainly she knew him. I mean, even based on her affidavit, we can tell that she knew him. But she testified at the hearing that he lived adjacent to her stepmother. So she did know him and know his face. That's the way she was able to identify that it was not him who actually committed the crime that night. It's not part of the question of the standard itself. The if proven and viewed in light of the evidence as a whole. So if you have ten calls and only three of them were put into this evidentiary hearing and we don't know anything about the rest, it seems to me you've got a question of needing an evidentiary hearing on the evidence as a whole. Not just on a bond issue, but on the evidence as a whole. Why would we not need to remand for a hearing? Your Honor, on the evidence as a whole, there is overwhelming evidence here that the district court's decision was right. And really these calls are just sort of a blip on the radar in terms of the overall evidentiary package as a whole. And I would like to speak to that for a moment if I can. You know, to begin with, the state's case here was never open and shut. You know, there was no physical evidence tying George Clark to the murder of Michael Martin. There were no fingerprints, no DNA, no blood evidence. There was never any evidence tying him to the gun used in the crime. The state's case was entirely circumstantial and it was built on this single witness, Beria Stewart. Now... That's a good jury argument, but we have to have some discussion of what a reasonable jury could believe. And what about the, I mean, it's not definitive, but the outcome in Mr. Harrington's case, who would have made exactly the same argument, and albeit that it took four trials, but ultimately a unanimous jury found him guilty. I'm sure a lot of people would think that was unreasonable. But the difference there is that here we have an additional witness, a credible eyewitness, a witness who the district court has now found credible, who points to someone else as having committed this crime. That evidence was never considered at Harrington's trial. And, indeed, the fact that there was a hung jury those first couple of times just points to exactly how difficult this case really was, even without the benefit of this additional eyewitness, who, by the way, the 2244B standard requires us to accept as proven. So your version of that, accept as proven, is that the statement exists or that the statement is true? Sort of ontologically, if the statement is true and the other man was a tall, dark-skinned man, then Clark, that's it. The affidavit ends the whole case. And that seems a little too strong. Isn't it more likely that you read that as if it's proven that she would have said that she did say that to her father and her father suppressed it, not that it is itself absolutely true rendition of what happened? I think that Your Honors hit on it when you really highlighted the point that this requires credibility determinations. And the state would have you believe that the proper test under 2244B is some sort of a sufficiency of the evidence type of test. But the Supreme Court has rejected that interpretation. It's held that a petitioner's showing is not insufficient solely because the trial record contains sufficient evidence to support the jury's verdict. That's in Schlupp. So what's really required under 2244B is it counts as true. But the very standard in Schlupp is the trial record plus the new evidence then has to be such that no reasonable jury could believe it. Let me put it to you this way. Obviously, you've got a lot of credibility problems about everybody. You've got recantations and unrecantations. You've got alleged threats by the defendants. You've got alleged threats by the police. Okay? And the jury made a finding vis-à-vis Ms. Stewart's whose recantations were there. Jackson's adds some weight to it, but it's subject to the same milieu, isn't it? That arguably she's subject even now to the same kinds of things that caused Stewart to incredibly recant. Now, I'm not saying that's right or that's wrong, but a reasonable juror looking her in the eye the same way that they had Stewart's statement would say, hey, you know, I think Stewart was right the first time and everybody else is being coerced. But again, Your Honor, the standard is... No reasonable juror could think that. Your Honor, the test asks us to do a counterfactual analysis to ask what a reasonable juror would do in light of the new evidence. And we have to remember that Beria Stewart's recantation was not before the jury at the original trial. After the trial, three months later, she comes forward and she recants her testimony. And over the course of a decade, she has consistently stood by that recantation. And I would urge the court to go and look at Record 11 at Page ID 122, which is her most recent affidavit from March 2013. It's not cursory. It is detailed. It's lengthy. She specifically disavows her prior statements. She explains her motivations in coming forward, that she's getting older and how she wants to make things right before she leaves this earth. And she even states that she's willing to take a polygraph test to determine that she is now telling the truth. And, you know, against this, we're now asked to consider whether this new witness who says she saw someone else commit this crime, if that is enough to create reasonable doubt in the minds of a juror, and I so bet that it is. Not a juror, every juror, every reasonable juror. Isn't that the standard? Your Honor, the standard looks to you. No reasonable juror would believe something. There was a struggle with the right standard in the court below. Is that not correct? In the district court's opinion, Your Honor? Yes. In the district court's opinion, she actually quoted the correct standard up front. She cited the 2244B analysis. She specifically pointed out that this court's prima facie determination under the 2244B standard was not enough. Yes. It opens the door, and it is settled that it has opened the door, right, to allow this to go forward. That decision is done. You got to go forward, and I think the state has said they no longer are challenging that initial prima facie standard, right? Correct, correct, yes. Now we're a step beyond that. Correct. Go forward with your argument on the next step. Correct. Then the 2244B analysis that the district court performed, she applied the right standard, and she found under that standard that no reasonable juror would have found Clark guilty. That decision was correct. I mean, we've got absolutely no physical evidence in this case whatsoever. We have a single witness who has since recanted her testimony over the course of, you know, a decade. Those recantations, were they the subject of a habeas petition in state court or otherwise? The basis of it. Your Honor, I believe that the recantation may have been submitted in connection with Clark's, I think it was his 2008 habeas petition along with a litany of other claims, but that does not prevent this court from considering the recantations as a part of the evidence as a whole. I understand, but that takes us back to the additional part is only the Jackson statement. Correct, correct, Your Honor. The additional part under the 2244B standard is that there is now another eyewitness who credibly undermines the only evidence tying this defendant to the crime. Takes us back to an alleged eyewitness and whether she, you're right, the district court did make this statement as to credibility really more after the bond hearing than before, did she not? I mean, originally she just says, well, there's nothing against her, so she's got to be credible, which is a little bit of a stretch. Well, you know, there are a number of reasons why this affidavit should be considered credible. It has several markers of credibility. And, you know, as Mr. Barnhart Lynn indicated, this is not just a case where anybody could write some crazy affidavit and then have their claim submitted. This affidavit didn't just come from any witness. It came from someone who knew George Clark at the time, who had reason to be and was routinely at the Parkside Apartments because her mother-in-law lived there, I'm sorry, her mother lived there, and it came from someone who had a connection to the police such that the claim of the conversation that she described is a credible claim. So there are several reasons to believe the credibility of this affidavit. And, in fact, the district court, after hearing this witness testify live and after the state had an opportunity to submit additional evidence and cross-examine that witness, then determined that she is credible. This is not just any run-of-the-mill affidavit. I'd like to make one more point about Beria Stewart's testimony, though, and that is that, you know, her testimony was also inconsistent with the physical evidence that was presented in this case. She claimed that George Clark and Harrington approached Michael Martin and beat him up and then dragged him across several porches and through a field. But when the state's medical examiner testified in this trial, she claimed that there were no injuries that were consistent with beating and dragging. And Kenneka Jackson's affidavit says that the assailant walked Michael Martin into the woods. So there's another reason why we should actually credit Kenneka Jackson's affidavit over Beria Stewart's, because Kenneka Jackson's testimony is actually consistent with what little physical evidence the state presented at trial here. Although she knows all of that at the time she makes the affidavit. That is, the first argument was presented to the jury, right? The argument that the medical examiner's report was inconsistent with Stewart's testimony. Yes, I mean, the jury would have heard all of that evidence, sure. And Jackson now has the ability to know about that discrepancy and take a side of it when she makes her affidavit. It's not independent of it, conceptually not independent. There's no indication that Jackson knew any of that. And, in fact, I don't think the materiality of that fact was ever effectively really raised. I mean, if you look at the state court's opinion here, the state court actually misstates Jackson's testimony and says that she testified that Michael Martin was dragged. So there's really no indication. We don't know because that was not brought out at an evidentiary hearing in terms of, you know, she waited, what, a couple of years after her father died to bring forth the affidavit. I guess the allegation is that she spontaneously had corresponded with Clark in prison. Your Honor, no. If I were on one side or the other, and I'm a judge, not the lawyer, but those are things I would have liked to have explored from both sides if I were the district judge. Your Honor, that was explored at the evidentiary hearing. And she explained that she took, I think it was about a year and a half, she took about a year and a half to come forward with her statement out of respect for her stepfather. I mean, this is a police officer who's had previous troubles with concealing evidence and things of that nature in the past. And, you know, this is someone who raised her as his own daughter. So, I mean, there's reason why someone would be hesitant to come forward with that type of evidence. I see that my time is up. Do you want to summarize in a sentence? Absolutely, thank you. In sum, the state's case against George Clark was never open and shut to begin with. There was no physical evidence that linked him to this crime. A single eyewitness is the only witness tying him to this crime, and she's since recanted her testimony several times over the course of a decade. On the other hand, Kenneka Jackson is a witness whom the district court has found credible and whose testimony clearly establishes a Brady violation and places a different gunman at the scene of the crime. Clark is only seeking a new trial here, a fair trial where he can have a chance to present all of the relevant evidence fairly and it can be considered without the constitutional infirmities that his first trial suffered. I respectfully request that the court should affirm the district court's opinion and grant him that new trial. Thank you. Thank you. Thank you, Your Honors. First, I do need to correct something. We did not have the jail calls at the time we filed the answer. I believe, and I don't have the record site in front of me, I don't know how proper it is for this court to consider what went on at the bond hearing. I know, Judge Strange, you mentioned that the record is typically closed at the time the decision is made, but I believe that Mr. Clark's attorney, not Ms. Wrengen but a different district court attorney, made a point at the hearing of putting on the record that all of the jail calls occurred after the district court granted habeas relief. I can check the record and I apologize. Is that right? Because my notes of timeline here is that those calls were from 15 and 16, which was after, at least some of them were after we permitted the habeas but not after the grant. Okay. In terms of the occurrence of the calls. Now, when you got them in the sense of listening to them or bringing them up, I don't know. Yeah, I'm not sure. I thought the record will show. I guess what I want to say is that my impression is different and I think the record should be checked on that. What is true is that we didn't have them at the time we filed our answer. Now, if the argument is that we should have gotten them, well, that's what we rely on the district court to say, hey, I think there's something here we need to develop the record. We don't expect the district court to take a piece of paper and say, well, this is enough without exploring the record further. If the district court had said, I think there's something here, and that's what the district court generally does in these cases where there's an affidavit that the district court thinks might be credible is that they order a hearing, they order discovery. I don't know of a single case, and I haven't read one in the appellee's brief and I haven't heard one referred to today, a single case other than this case where an affidavit comes forward, there's facts that might be true or might be false, and the district court goes ahead and says, on the basis of this affidavit alone and a letter from two law students, add that in or not, I grant habeas relief. It doesn't happen. The record has to be developed. But in any event, I'm not sure when the jail calls occurred, but we didn't have them at the time we filed the answer. Again, I just have to dispute the strength of the evidence. This is not a weak case. I know that my opposing counsel says, well, we didn't bring in all this circumstantial evidence, which would have been physical evidence, but says we only had circumstantial evidence. When we actually had an eyewitness who, if believed, is about the strongest evidence you could have. I mean, Kanaka Jackson doesn't say she saw the murder either, so neither one of them claims to have seen the murder, but the evidence that she saw these two men arguing with and assaulting with him, marching him into the woods, seconds later, shots fired. If believed, that's a very strong case. The only question is whether to believe it. I see my time has expired. I thank the Court and we respectfully request reversal. We thank you for your arguments and your briefing, and we notice that you are representing Mr. Clark pro bono. The Court appreciates all your work on this and your assistance with someone who needed assistance without pay. Thank you. Thank you so much. You may call the next case.